UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NATALIA CUELLAR, et al., ) | |
| Plaintiffs, ) | |
| vs. ) | 18 CV 5118 |
| The CITY OF OAK FOREST, et al., ) | Judge THARP |
| Defendants. ) | Magistrate Judge MASON |

**PLAINTIFFS' RESPONSE
TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiffs Natalia Cuellar, Luis Cuellar, Javier Cuellar, and Celina Cuellar, on behalf of herself and her minor son, D.C., ("Plaintiffs") by and through their attorneys, the Hamilton Law Office, LLC, respectfully submit this memorandum of law in opposition to Defendants' motions to dismiss count I of Plaintiff's complaint:

**INTRODUCTION**

This civil rights lawsuit arises out of Defendant Officers' execution of a search warrant at Plaintiffs' home at 5:30 a.m. on September 8, 2017. *Plaintiffs' Complaint ("Pl. Cmplt.")*, at ¶¶ 19, 21. All of the Defendant Officers are police officers employed by the Defendant Municipalities.[1] *Pl. Cmplt.*, at ¶¶9-14. Some of the Defendant Officers are members of the South Suburban Emergency Response Team ("SSERT"), a multijurisdictional emergency response team comprised of a number of police departments in the south suburbs of Chicago. *Pl. Cmplt.*, at ¶ 15. Plaintiffs allege that on September 5 or 6, 2017, three officers employed by Defendant Oak Forest went to Plaintiffs' home looking for Plaintiffs Javier ("Javier") and Celina ("Celina") Cuellar's adult son, Cristian Cuellar

---

[1] Defendant City of Oak Forest employs Defendant Officers Gallagher, O'Donnell, Devries, Klappauf, Varkalis, and Lopez. Defendant Village of Crestwood employs Defendant Officer Passaglia. Defendant Village of Orland Park employs Defendant Office Schoonveld. Defendant Village of Tinley Park employs Defendant Officers Borrowdale and Davisson. Defendant City of Calumet employs Defendant Officer Maletich. Defendant Village of Oak Lawn employs Defendant Officer Cimonetti.

("Cristian"), who is not a Plaintiff in this lawsuit. *Pl. Cmplt.*, at ¶ 17. Plaintiff Natalia Cuellar ("Natalia") answered the door and told the officers that Cristian did not and had not lived at that address for some time. *Pl. Cmplt.*, at ¶ 18.

Nevertheless, at 5:30 a.m. on September 8, 2017, Defendant Officers arrived at Plaintiffs' home to execute a search warrant authorizing a search of Plaintiffs' home for Cristian. *Pl. Cmplt.*, at ¶¶ 20-21. Defendant Officers were wearing military-style uniforms and equipment. *Pl. Cmplt.*, at ¶¶ 26-27. Defendant Officers broke Plaintiff's front door in, knocking it down. *Pl. Cmplt.*, at ¶¶ 21, 24, 27. Plaintiff Luis Cuellar ("Luis") heard Defendant Officers at the front door and went to see what was happening. *Pl. Cmplt.*, at ¶¶ 22-23. Once Defendant Officers entered the home, they threw a flash grenade into the Cuellar's home that went off near Luis. *Pl. Cmplt.*, at ¶ 25. Defendant Officers then zip-tied Luis's wrists together. *Pl. Cmplt.*, at ¶28. Defendant Officers went around the home zip-tying Javier, Celina, Natalia, and Plaintiff D.C.'s ("D.C.") hands behind their backs. *Pl. Cmplt.*, at ¶¶ 34, 37, 41. Defendant Officers ordered Javier and Celina to the ground before zip-tying their hands behind their backs. *Pl. Cmplt.*, at ¶ 33. Before zip-tying D.C.'s hands behind his back, Defendant Officers broke down the door to the bedroom where D.C. was sleeping. *Pl. Cmplt.*, at ¶35. Defendant Officers Maletich and Cimonetti grabbed D.C. from the bed, violently threw him on the ground, and jumped on top of him, causing D.C. to hit has face on the floor and suffer injuries to his lip, face, neck, and back. *Pl. Cmplt.*, at ¶ 36. Around the same time, a group of all male Defendant Officers entered the bedroom where Natalia was sleeping in her underwear. *Pl. Cmplt.*, at ¶¶ 38-9. Natalia tried to cover herself up with a blanket but one of the Defendant Officers in her room pulled the blanket off of her. *Pl. Cmplt.*, at ¶ 40. While Natalia was still in her underwear, Defendant Officers zip-tied her hands behind her back and for some time would not allow her to get dressed or cover herself. *Pl. Cmplt.*, at ¶ 41. Defendant Officers made Plaintiffs sit in their living

room with their hands zip-tied behind their backs while Defendant Officers searched their home for more than two hours. *Pl. Cmplt.*, at ¶¶ 42, 46.

During the search of Plaintiffs' home, Defendant Officers ransacked the home, causing disarray and property damage, including breaking the gate, front door, and bed that D.C. had been sleeping in that morning. *Pl. Cmplt.*, at ¶¶ 43, 44. None of the Defendant Officers ever even mentioned Cristian's name or asked where he was. *Pl. Cmplt.*, at ¶45. Plaintiffs were not free to leave their home from the time Defendant Officers entered the home until the time they left. *Pl. Cmplt.*, at ¶¶ 45, 47. After searching for more than two hours, Defendant Officers left, arresting no one. *Pl. Cmplt.*, at ¶ 46. On October 5, 2017, Plaintiffs' counsel served Freedom of Information Act requests for police reports and other evidence related to the September 8, 2017 incidents at their home upon the Oak Forest Police Department. *Pl. Cmplt.*, at ¶ 48. Two weeks after Plaintiff's counsel served these FOIA requests, on October 16, 2017, Defendant Officers Maletich and Cimonetti had D.C. arrested for aggravated battery and resisting arrest. *Pl. Cmplt.*, at ¶ 49. The Cook County State's Attorney's Office subsequently elected not to file any charges against D.C. *Pl. Cmplt.*, at ¶ 50.

Plaintiffs' complaint contains four counts: A Fourth Amendment unreasonable search and seizure claim based on the manner and scope of the search against all Defendants for all Plaintiffs, a Fourth Amendment false arrest claim against Defendants Maletich and Cimonetti for D.C., a Fourth Amendment excessive force claim against Defendants Maletich and Cimonetti for D.C., and an Illinois battery claim against Defendants Maletich and Cimonetti for D.C. Defendants Village of Oak Lawn and City of Calumet are Defendant Officers Maletich and Cimonetti's employers and are named under a theory of *respondeat superior* liability and for indemnification purposes. Defendants City of Oak Forest, Village of Crestwood, Village of Orland Park, and Village of Tinley Park are all named for indemnification purposes should Plaintiffs prevail on Count I. Defendants Oak Forest, Oak Lawn, Calumet, Crestwood, and Tinley Park (and their corresponding Defendant Officers)

3

have all moved to dismiss Count I of Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Village of Orland Park has not moved to dismiss Plaintiffs' complaint. Because Defendants make the same arguments in their motions to dismiss, this response addresses all five motions. All five motions should be denied.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what…the claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The complaint must "include sufficient facts to 'state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss brought under Rule 12(b)(6), the court "construe[s] the…[c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ARGUMENT

### I. Plaintiffs' complaint sufficiently apprises Defendants of the misconduct Plaintiffs allege.

Defendants argue that Count I of Plaintiffs' complaint must be dismissed because it groups all of the Defendant Officers together and relies on a theory of collective responsibility. Plaintiffs submit that their complaint identifies specific Defendant Officers where possible before any

4

discovery has been conducted, and that this type of pleading is permissible at this stage in the litigation. In fact,

> "[r]ule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer. Such a pleading standard would effectively allow police officers to violate constitutional rights with abandon as long as they ensured they would not be individually identified, even if liability for acting in concert (or for aiding and abetting each other) would otherwise apply." *Hyung Seok Koh v. Graf*, 2013 WL 5348326, at *4 (N.D. Ill. 2013).

Instead, "[a]ll that is required at this stage of the proceedings is that Plaintiff[s] put Defendant Officers on notice of [their] claims by alleging a short and plain statement showing that [they are] entitled to relief." *Sanders v. City of Chicago Heights*, 2014 WL 5801181, at *3 (N.D. Ill. Nov. 7, 2014). Because Plaintiffs have done that, Defendants' motions to dismiss should be denied.

Plaintiffs have identified 12 police officers who were inside their home on September 8, 2017. On that day, Plaintiffs awoke to find masked or helmet-wearing men in military style uniforms swarming through their home. A flash grenade was thrown into their home. The family was zip-tied in their pajamas or underwear for two hours. None of the police officers even attempted to ascertain Cristian's whereabouts or whether he lived there. The Cuellar's home was ransacked and left in utter disarray. This was a chaotic and stressful experience for Plaintiffs, so it is not surprising that at this point in the litigation they cannot identify, by name, which Defendant Officer did what aside from Defendants Maletich and Cimonetti. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) ("'[A]s the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery.'") (internal citations omitted).

Defendants' contention that they cannot respond to Plaintiffs' complaint is hard to take seriously. Plaintiffs' complaint is specific and provides details of Defendants' misconduct during their execution of the search warrant. It may simply be impossible to identify which officers did

5

what inside the home because they were purposely dressed in a manner that concealed their faces and identities. That is certainly not Plaintiffs' fault. Plaintiffs have alleged that the manner and scope of the search conducted in their home that night was unreasonable and they have provided sufficient details about their misconduct allegations. Defendant Officers know if they engaged in any of the misconduct alleged and are free to admit, deny, or claim a lack of knowledge as to the allegations. *See Wilson v. City of Chicago*, 2009 WL 3242300, at *2 (N.D. Ill. Oct. 7, 2009) (Finding defendants' argument that it would be "unfair" and "illogical" to force each defendant to respond to the allegations in the complaint to make "little sense," holding that "[e]ach Defendant knows what he did or did not do and can admit or deny the fact based on his knowledge."). Furthermore, Count I includes liability for Defendant Officers' failure to intervene. Even if Plaintiffs cannot link a specific Defendant Officer to specific misconduct, with the benefit of discovery, Plaintiffs may be able to establish that that Defendant Officer was present but failed to intervene to prevent the misconduct.

Defendants' reliance on *Carter v. Dolan*, 2009 WL 1809917 (N.D. Ill. June 25, 2009), is misplaced. *Carter* involved the execution of a search warrant by a group of Chicago police officers on the City's west side. *Carter*, 2009 WL 1809917, at *2. The court dismissed the plaintiff's complaint for failing to establish that each defendant officer was personally responsible for the misconduct alleged. *Id.*, at *3. However, that was *after* the court allowed plaintiff the opportunity to conduct pretrial discovery to link specific defendants to specific misconduct. *Id.*, at *1. Furthermore, the plaintiff in *Carter* had the benefit of testimony from the named defendants in a companion civil case arising out of the same incident, whereas Plaintiffs here do not. *Id.*, at *2. Defendants also cite to four cases that were decided in the summary judgment context. *See Palmer v. Marion Co.*, 327 F.3d 588 (7th Cir. 2003); *Gentry v. Duckworth*, 65 F.3d 555 (7th Cir. 1995); *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014 (7th Cir. 2003); and *Grievson v. Anderson*, 538 F.3d 763 (7th Cir. 2008). These cases should not guide this Court's reasoning in deciding a motion to dismiss.

Plaintiffs' complaint provides a clear and detailed description of Defendants' misconduct. Defendant Officers know whether they were involved in zip-tying a young woman in her underwear, whether they were in a room where a juvenile was unnecessarily violently seized and thrown to the ground, whether they broke the Plaintiffs' gate, who threw or authorized the use of a flash grenade inside the Cuellar's home, who zip-tied the Cuellar family, and who ransacked their home. Because Plaintiffs' complaint sufficiently apprises Defendants of the misconduct alleged, Defendants' motions to dismiss should be denied.

## II. The Defendant Municipalities are named for indemnification purposes

Defendant Village of Crestwood ("Crestwood") argues that Plaintiffs' complaint should be stricken as to Defendant Crestwood because *respondeat superior* is unavailable in §1983 claims and Plaintiffs have failed to plead municipal liability. *See Defendant Village of Crestwood's Motion to Dismiss*, at pgs. 5-6. "This argument improperly conflates indemnification with a substantive claim against the [municipal defendants] based on vicarious liability." *Turner v. City of Chicago, III*, 2013 WL 4052607, at *7 (N.D. Ill. Aug. 12, 2013). Here, except for the Village of Calumet, which employs Defendant Maletich, and Village of Oak Lawn, which employs Defendant Cimonetti, the rest of the Defendant Municipalities are named only for indemnification purposes on Plaintiffs' federal law claims.[2] *See Pl. Cmplt.*, at ¶16. "The Illinois Tort Immunity Act directs municipalities to pay tort judgments and settlements for municipal employees who are liable while acting in the scope of their employment. Indemnification claims routinely accompany…§1983 claims." *Chriswell v. Village of Oak Lawn*, 2013 WL 5903417, at *3 (N.D. Ill. Nov. 4, 2013). Should Plaintiffs succeed on their federal law claims, the Municipal Defendants will be required to pay any settlement or judgment awarded. Because Defendant Village of Crestwood is properly named for indemnification purposes, its motion to dismiss should be denied.

---

[2] Defendants City of Calumet and Village of Oak Lawn are also liable under a theory of *respondeat superior* for Plaintiffs' state law claim against Defendant Officers Maletich and Cimonetti.

## CONCLUSION

Defendants complain that they cannot answer Plaintiffs' complaint because they cannot decipher what misconduct they are accused of. Plaintiffs' complaint is clear: Defendant Officers broke into Plaintiffs' home in the early morning hours of September 8, 2017. The manner and scope of their search and seizure of the Plaintiffs and their home was unreasonable and Plaintiffs' complaint describes why. Defendant Officers know whether they were involved in any of the misconduct described in the complaint and are free to admit, deny, or claim a lack of knowledge. Because Plaintiffs' complaint sufficiently pleads their unlawful search and seizure claim, Defendants' motions to dismiss should be denied.

Respectfully submitted,

/s Kathleen A. Hennessy
One of Plaintiffs' Attorneys

Torreya L. Hamilton
Kathleen A. Hennessy
HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, Illinois 60604
312.726.3173